IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TELEVISION EVENTS & MARKETING, INC., a Hawaii Corporation, | ) ) ) | CV. NO. 05-00259 ACK/KSC |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| AMCON DISTRIBUTING CO., a Delaware Corporation; THE BEVERAGE GROUP, INC., a Delaware Corporation; THE BEVERAGE GROUP aka AMCON BEVERAGE COMPANY; AMCON CORPORATION, a Delaware Corporation; and WILLIAM F. WRIGHT, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
|        Defendants. | ) | |
| _____ | ) | |

ORDER DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO TRANSFER FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE; AND DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO TRANSFER FOR CONVENIENCE

PROCEDURAL BACKGROUND

On March 8, 2005, Television Events & Marketing, Inc. ("Plaintiff" or "TEAM") filed a Complaint in the Circuit Court of the First Circuit of the State of Hawaii against AMCON Distributing Company; The Beverage Group, Inc.; and Trinity Springs, Inc. (collectively "Original Defendants") for (1) breach

1

of license agreements and (2) fraudulent transfer under Hawaii
Revised Statutes ("HRS") §§ 651C-4 and 651C-5.  The Complaint was
removed to this Court on April 12, 2005.

On May 5, 2005, Original Defendants filed a Motion to
Dismiss and for Summary Judgment and to Transfer Venue
("Defendants' Motion for Dismissal and Summary Judgment").

On May 25, 2005, Defendant AMCON Distributing Company
filed a Motion for Protective Order pursuant to Federal Rule of
Civil Procedure 26(c), requesting an order that AMCON
Distributing Company not be required to respond to Plaintiff's
discovery requests until after the Court heard and ruled on
Defendant's Motion for Dismissal and Summary Judgment.  Plaintiff
filed an Opposition on May 27, 2005.

On May 25, 2005, Plaintiff filed a Motion to Continue
the hearing on Defendants' Motion for Dismissal and Summary
Judgment,[1/] seeking a continuance of the hearing on the Motion
for at least ninety days in order to allow Plaintiff to conduct
discovery to respond to Original Defendants' Motion. (Mot. to
Cont. at 10).  Original Defendants filed an Opposition on May 27,
2005.  On May 31, 2005, Plaintiff filed a Reply in support of its
Motion to Continue.  A hearing was held on both the Motion to

---

[1/]   The Motion to Continue was lodged with the Court on May 23, 2005,
along with an Ex Parte Motion to Shorten Time for the hearing on the Motion to
Continue.  On May 24, 2005, this Court signed an Order granting the Ex Parte
Motion to Shorten Time and setting a hearing on the Motion to Continue for May
31, 2005.  On May 25, 2005, the Motion to Continue was officially filed.

Continue and the Motion for Protective Order on May 31, 2005.  On June 1, 2005, the Court issued a written Order Granting Plaintiff's Motion to Continue and Denying Defendants' Motion for a Protective Order.

On September 1, 2005, Plaintiff filed a First Amended Complaint adding Defendants The Beverage Group aka AMCON Beverage Company and William F. Wright (collectively "Additional Defendants"), an Opposition to Defendants' Motion to Dismiss and for Summary Judgment and to Transfer Venue, and a Separate and Concise Statement of Facts in Support of its Opposition.  On September 6, 2005, Plaintiff filed an Errata to Plaintiff's Opposition and an Errata to Plaintiff's Separate and Concise Statement of Facts.  On September 7, 2005, Plaintiff filed an Amended Opposition and an Amended Separate and Concise Statement of Facts.

On September 7, 2005, Original Defendants filed an Ex Parte Motion for Leave to File Reply Memorandum in Support of Defendants' Motion to Dismiss and for Summary Judgment and to Transfer Venue Filed on May 5, 2005 Not to Exceed 23 Pages.  On September 8, 2005, the Court notified counsel for Plaintiff and Original Defendants that the Court was Granting Defendants' Motion and would be filing a written Order that would also permit Plaintiff to respond to Defendants' Reply by Thursday, September 15, 2005; permit the Defendants to respond to Plaintiff's

response by Tuesday, September 20, 2005; and reset the hearing on Defendants' Motion from September 19, 2005 to September 27, 2005.

On September 8, 2005, Original Defendants filed a Reply in Support of their Motion to Dismiss and for Summary Judgment and to Transfer Venue.  On September 9, 2005, the Court filed a written Order Granting Defendants' Ex Parte Motion for Leave to File Reply Memorandum in Support of Defendants' Motion to Dismiss and for Summary Judgment and to Transfer Venue Filed on May 5, 2005 Not to Exceed 23 Pages.

On September 15, 2005, Plaintiff filed a Reply Memorandum to Defendants' Reply Memorandum.

On September 20, 2005, Original Defendants filed a Sur-Reply Memorandum in Support of Defendants AMCON Distributing Company; The Beverage Group, Inc.; and Trinity Springs, Inc.'s Motion to Dismiss and for Summary Judgment and to Transfer Venue.

On September 27, 2005, a hearing on Original Defendants' Motion was held.

On September 29, 2005, the Court issued a written Order Denying AMCON Distributing Company's Motion To Dismiss for Lack of Personal Jurisdiction; Granting Defendants' Request to Amend their Motion to Dismiss and for Summary Judgment and to Transfer Venue, Filed May 5, 2005, to Assert a Defense of Lack of Personal Jurisdiction as to Trinity Springs, Inc.; Denying Defendants AMCON Distributing Company and The Beverage Group, Inc.'s Motion

4

for Summary Judgment as to Plaintiff's First Claim for Relief and Not Addressing the Motion as to The Beverage Group, William F. Wright, nor AMCON Corporation; Denying Defendants AMCON Distributing Company and The Beverage Group, Inc.'s Motion for Summary Judgment as to the Plaintiff's Second Claim for Relief and Not Addressing the Motion as to William F. Wright nor Trinity Springs, Inc.; and Denying Defendants' Motion To Transfer Venue. ("September 29, 2005 Order").

On October 5, 2005, Additional Defendants filed a Motion to Dismiss or to Transfer Venue ("Defendants' Motion for Dismissal or Transfer").

On October 31, 2005, the parties Stipulated that the Plaintiff would file its Memorandum in Opposition to the Defendants' Motion for Dismissal or Transfer ("Opposition Memo") by December 15, 2005.  The parties Stipulated that the Additional Defendants would file their Reply Memorandum ("Reply Memo") by December 22, 2005.

On December 2, 2005, Plaintiff filed a Motion for Leave to File a Second Amended Complaint.

On December 15, 2005, Original Defendants filed for Joinder to the Defendants' Motion for Dismissal or Transfer.

On December 16, 2005, Plaintiff filed its Opposition Memo.  The parties Stipulated to modify the Briefing Schedule and it was so Ordered by the Court.

On December 19, 2005, the parties Stipulated to the filing of a Second Amended Complaint.  On December 21, 2005 Plaintiff filed a Second Amended Complaint against AMCON Distributing Company; The Beverage Group, Inc.; The Beverage Group aka AMCON Beverage Company; AMCON Corporation; and William F. Wright (collectively "Defendants").  Trinity Springs Inc. was eliminated as a defendant in the Second Amended Complaint.

On December 23, 2005, Additional Defendants filed their Reply Memo.

A hearing was held on the Defendants' Motion for Dismissal or Transfer on January 9, 2006.  At that hearing, Plaintiff submitted three cases for consideration in support of its arguments.  Court granted Defendants three days to submit a response to those cases.  Additional Defendants submitted their response on January 12, 2006.

## FACTUAL BACKGROUND[2/]

Plaintiff Television Events & Marketing, Inc. ("Plaintiff" or "TEAM") is a Hawaii corporation, which has its principal place of business in Honolulu, Hawaii.  (Compl. ¶ 4)[3/]. Plaintiff alleges Defendant Amcon Distributing Company ("Distributing") is a Delaware corporation, with its principal

---

[2/] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

[3/] Unless noted otherwise, all citations to the Complaint will be to Plaintiff's Second Amended Complaint filed December 21, 2005.

place of business in Nebraska.  (Compl. ¶ 5).  Plaintiff alleges
that The Beverage Group, Inc. ("TBG, Inc.") is an inactive
Delaware Corporation, which has its principal place of business
in California and is a wholly owned subsidiary of Distributing.
(Compl. ¶ 6).   Defendant Amcon Corporation ("Amcon Corp.") is a
Delaware Corporation, with its principal place of business in
Nebraska.  (Compl. ¶ 7; Defendants' Motion for Dismissal or
Transfer at 3).  Defendant William F. Wright ("Wright") is a
citizen of California. (Defendants' Motion for Dismissal or
Transfer at 2).  Plaintiff alleges that The Beverage Group aka
Amcon Beverage Company was either (1) a "dba" name for Wright
working for his own interest and/or as agent for Distributing;
(2) a joint venture started in 2002 that was funded and operated
by Wright together with Amcon Corp. and/or Distributing in
anticipation of the formation of TBG, Inc.; or (3) the self-
chosen name used by Wright, Amcon Corp., and Distributing as
promoters of TBG, Inc.  (Compl. ¶ 9).  Plaintiff alleges that, in
January 2003, Wright caused the assets and business of The
Beverage Group to be turned over to TBG, Inc.  (Compl. ¶ 10).

        Plaintiff owns the registered trademark "XTERRA"
(hereinafter "the Mark").  (Compl. ¶ 11).  Plaintiff alleges that
it licenses the Mark to various companies in connection with its
triathlon races throughout the world.  (Opposition Memo at 2,3).
In 2002, Plaintiff was seeking to replace its licensee for energy

bars and drinks.  (Opposition Memo at 3).

Plaintiff alleges that, in May 2002, Tom Kiely ("Kiely"), TEAM's President and CEO, had a discussion with Wright.  (Opposition Memo, Ex. B).  Plaintiff alleges that this discussion explored the possibility of forming an alliance to create energy bars and energy drinks bearing the Mark. (Opposition Memo at 3).  On May 24, 2002, Kiely followed up this conversation with a letter confirming that they would meet in Hawaii to discuss a possible alliance. (Opposition Memo, Ex. B). Plaintiff alleges that a draft of the license agreement was attached to the letter. (Opposition Memo at 3).

Plaintiff alleges that, on July 21, 2002, Wright met with Kiely in Honolulu, Hawaii to discuss the "possibility that some entity controlled by Wright would license the Mark." (Compl. ¶ 12; Opposition Memo at 3).  In his deposition, Wright testified that in considering the idea of a new business venture, he viewed it as an opportunity for Distributing and not as an opportunity for himself, personally, nor for Amcon Corp.. (Opposition Memo, Ex. C (Wright Depo.) at 40:3-8).

Plaintiff alleges that, in the fall of 2002, Wright personally hired, supervised, and (through Amcon Corp.) paid Stephen Sparks ("Sparks"), Richard Parsons ("Parsons"), and Archie Thornton ("Thornton") to develop and operate The Beverage Group.  (Compl. ¶ 14).  Plaintiff alleges that, throughout the

fall of 2002, Sparks, Parsons, and Thornton worked under Wright's direction and were paid by Wright. (Compl. ¶ 16).  Plaintiff alleges that Sparks, Parsons, and Thornton performed various services, including negotiations with TEAM, in furtherance of a new beverage venture (which was called at various times "The Beverage Group" and "Amcon Beverage Company.") (Compl. ¶ 15). Wright testified that in meeting with Sparks, Parsons, and Thornton regarding the beverage venture he was acting in his capacity as Chairman and CEO of Distributing.  (Opposition Memo, Ex. C (Wright Depo.) at 44:1-22).

Plaintiff alleges that because Wright wanted to keep the start-up expenses off of Distributing's books, Wright paid Sparks, Parsons, and Thornton from a separate entity named Amcon Corp.. (Opposition Memo at 7, Ex. C (Wright Depo.) at 49:7-23). Wright testified that he maintains "a business checking account by the name of Amcon Corporation, so [he] used that account where [he] would put money into the Amcon Corporation account, and then Amcon Corporation would fund Mr. Thornton, Mr. Sparks and Dick, Mr. Parsons." (Opposition Memo, Ex. C (Wright Depo.) at 49:18-23).  Wright further explained that "in many ways [Amcon Corp.] is a zero balance account" and that it was simply a convenient conduit "to fund expenses that people were going to be a part of the new business venture incurred." (Opposition Memo, Ex. C (Wright Depo.) at 54:12-19).  Plaintiff alleges that, in 2002,

all of the expenses for the new venture, totaling more than $300,000, were paid using checks provided by Amcon Corp. (Opposition Memo at 4).  Plaintiff alleges that Amcon Corp. paid some of these expenses before receiving any money from Wright. (Opposition Memo at 9).  Plaintiff claims that Wright "expected that Distributing would reimburse him (if its directors decided to pursue the new venture), but he was never fully reimbursed." (Opposition Memo, Ex. C (Wright Depo.) at 52:13-53:8).  Wright testified that Amcon Corp. was never, as an entity, expected to reimburse him with its own assets, but he was reimbursed by Distributing for post-December disbursements or pre-December disbursements that had a post-December benefit.  (Opposition Memo, Ex. C (Wright Depo.) at 54:4-10, 52:21-53:3).  Plaintiff contends that Wright remains "out of pocket" over $70,000. (Compl. ¶ 17).

Plaintiff alleges that, throughout the fall of 2002, negotiations took place between TEAM and promoters of the beverage venture led by Wright.  (Opposition Memo at 6).  The negotiations included Sparks, Parsons, and Thornton's October 2002 business trip to Hawaii to see the XTERRA World Championships on Maui and to meet with TEAM about possible license agreements.  September 29, 2005 Order at 9.  Plaintiff alleges that the identity of the new beverage venture and proposed licensee evolved over time and various draft agreements

10

were circulated identifying the licensee as "Amcon Corporation,"
"Amcon Beverage Company," and "The Beverage Group." (Opposition
Memo at 5).  Plaintiff alleges, specifically, that Amcon Corp.
was listed as the licensee on the October 6, 2002 draft of the
license agreement.  (Opposition Memo at 9).  Plaintiff alleges
that throughout the negotiations with TEAM, Wright informed TEAM
that he was attempting to expand Distributing's operations and
TEAM believed that the licensee was to be Distributing.
(Opposition Memo at 5, Ex. A ¶ 10).  Kiely states that "[b]ased
on the statements of Mr. Wright, including the various drafts of
the XTERRA license agreements that were exchanged, [he] believed
that [Distributing] was the licensee." (Opposition Memo, Ex. A
(Kiely Decl.) ¶ 10).

Plaintiff alleges, on December 13, 2002, that Wright
offered The Beverage Group's assets and business opportunities to
Distributing. (Compl. ¶ 17).  Plaintiff alleges that Distributing
decided to reimburse Wright for the expenses incurred to start
The Beverage Group that were beneficial to future operations.
(Compl. ¶ 17).  Plaintiff alleges that Distributing's board of
directors, with Wright as the Chairman, decided to form a new
subsidiary, TBG, Inc., to pursue the beverage opportunity.
(Compl. ¶ 17).  TBG, Inc. was registered as a Delaware
corporation on December 20, 2002.  (Opposition Memo, Ex. L).

Plaintiff alleges that, sometime between December 21

11

and 23, Sparks, as President and CEO of The Beverage Group, signed the two subject license agreements ("License Agreements"), pursuant to Wright's instructions. (Compl. ¶ 21; September 29, 2005 Order). The License Agreements themselves, which are attached to the Complaint as Exhibits 1 and 2, are executed by "The Beverage Group," by Stephen O. Sparks as President and CEO. The references to "The Beverage Group" in the agreements do not contain an "Inc." corporate designation. Each agreement states that it is entered into as of October 1, 2002. (Compl., Exs. 1 and 2). Plaintiff alleges that, at the time the agreements were signed by Sparks, TBG, Inc. did not have officers, shareholders, bylaws, or capital and that TBG, Inc. did not issue stock until 2003, weeks after the License Agreements were signed in December 2002. (Compl. ¶ 21). Although Defendants initially argued that TBG, Inc. was not a signatory of the agreements, Defendants now allege that Sparks executed the agreements as the President and CEO of TBG, Inc. September 29, 2005 Order. Plaintiff alleges, in January 2003, that Kiely subsequently signed the agreements in Hawaii. (Compl. ¶ 24; Opposition Memo, Exs. G and H).

Plaintiff alleges that the agreements grant a license to The Beverage Group to use the Mark in connection with manufacturing, promoting, and selling beverages and energy bars. (Compl. ¶ 22, 23; Exs. 1 and 2). Both agreements contain a provision stating, "[t]his Agreement shall be governed by and

construed in accordance with federal laws as they apply to trademark matters and in accordance with the laws of the State of Hawaii as applied to contracts entered into and to be performed entirely within the State of Hawaii." (Compl., Ex. 1 at 9 and Ex. 2 at 9).  Plaintiff alleges, under the agreements, that The Beverage Group would "[m]ake specified payments to TEAM; and [e]xert its best effort to maximize distribution and sales of the products which they were authorized to manufacture, distribute, and sell under the License Agreement." (Compl. ¶ 25).  Plaintiff alleges, under the agreements, each party had cross-promotional duties. (Opposition Memo (Ex. G at "Exhibit F")). TEAM agreed to display licensee signage at events and provide display area for the licensee in the XTERRA Pavilion at events.  Id.  The licensee agreed to promote XTERRA events and provide energy drinks at XTERRA events.  Id.  Plaintiff alleges that all payments were received by TEAM in Hawaii.  (Compl. ¶ 24).

Plaintiff alleges that in the Minutes of Meeting of Board of Directors of The Beverage Group, Inc. dated January 3, 2003 and signed by Wright as Acting Secretary, Wright, the sole Director of the company at that time, moved for Parsons, Sparks, and Thornton to be nominated and elected as additional Directors of the Company. (Opposition Memo, Ex. F).  A "Statement of Unanimous Consent to Action Taken in Lieu of the First Meeting of the Board of Directors of The Beverage Group, Inc." ("Statement")

adopted a resolution that Parsons would be elected as Chairman of the Board, Sparks would be elected President, and Nicola Sundeen ("Sundeen") would be elected Secretary. (September 29, 2005 Order at 12). The Statement also adopted a resolution that authorized and directed Sparks and Sundeen to sell and issue to Distributing 50,000 shares of TBG, Inc.'s common stock for the aggregate cash consideration of $500. Id. The Statement also resolved that TBG, Inc. would establish and maintain a general account with Bank of America. Id. The Statement is signed by Wright and dated January 7, 2003. Id.

On December 27, 2002 and January 6, 2003, TEAM received initial payments under the License Agreements from Amcon Corp. (Opposition Memo at 5). The payments were made through four checks issued by "Amcon Corporation" to Plaintiff "TEAM," two dated 12/27/2003 and two dated 1/6/2003. (Opposition Memo, Ex. I). The subject lines of the checks state the following: (1) "license agreement/ energy drinks/ Jan. 1 2003 payment"; (2) "trademark license agreement/ energy beverages"; (3) "trademark license agreement/ protein bars"; (4) "license agreement/ protein bars/ Jan. 1 2003 payment". (Opposition Memo, Ex. I). Each of the checks is signed by Nicola Sundeen. (Opposition Memo, Ex. I). Wright testified that after The Beverage Group, Inc. had its own bank account, the royalties due under the two agreements were funded by Distributing. (Opposition Memo, Ex. C (Wright Depo.)

14

at 221).  Wright stated, "I believe the way The Beverage Group, Inc. operated, you could say that anything they paid out ultimately came pursuant to a request to Amcon Distributing to fund it, including the X[TERRA] royalties."  (Opposition Memo, Ex. C (Wright Depo.) at 221:19-25).

Plaintiff alleges, in 2003, that TBG, Inc. assumed the role of The Beverage Group under the License Agreements without notification to TEAM or consent from TEAM.  (Compl. ¶ 26).  Plaintiff alleges that although the license agreements run through 2007, all payments under the agreements stopped in July 2004.  (Compl. ¶ 27; Opposition Memo, Exs. H and I).  Since that time, Plaintiff alleges that The Beverage Group's obligations under these agreements have not been met by either The Beverage Group, or TBG, Inc.. (Compl. ¶ 27).  Plaintiff alleges that, as of October 2004, Wright became the sole director of TBG, Inc.. (Opposition Memo at 8).  Plaintiff alleges that Wright traveled to Hawaii and had dinner with Kiely on November 2, 2004.  At this dinner, Wright affirmed his and the licensee's commitment to XTERRA.  As a result, Plaintiff alleges that it "has suffered and will continue to suffer damages."  Compl. ¶ 32; Opposition Memo, Ex D (Kiely Depo) 144:1-4 ("not only have we lost money from last year, but we can't get anything for '05 and maybe '06).  Plaintiff alleges that it has fully performed under the agreements at all times.  (Compl. ¶ 29).

15

Plaintiff alleges that Distributing paid Amcon Corp. to provide management service from 2002-2004. (Opposition Memo at 9). Plaintiff alleges that Wright retains control over the XTERRA energy drink and energy bar formulas. (Opposition Memo at 8, Ex. C (Wright Depo.) at 212:11-15).

**STANDARD**

I.   Motion to Dismiss for Lack of Personal Jurisdiction

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). It is within the Court's discretion to allow the plaintiff to submit affidavits, allow affidavits plus discovery, or to conduct an evidentiary hearing. Data Disc., Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" through the submitted materials in order to avoid dismissal.[4/] Schwarzenegger, 374 F.3d at 800; Data Disc., 557 F.2d at 1285. In such cases, the Court only inquires into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." Id. (quoting Caruth v. International

---

[4/] The plaintiff "must eventually establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1137 (D. Haw. 1997).

Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)).

"In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (quoting WNS Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)); accord Pure, Ltd. v. Shasta Bev., Inc., 691 F. Supp. 1274, 1277 (D. Haw. 1988).

II.  Motion to Transfer

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).  A motion to transfer venue pursuant to Section 1404(a) requires the Court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case.  Jones v. GNC Franchising, Inc., 211 F.3d 495,

17

498-99 (9th Cir. 2000).

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).  Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action.  <u>Jones</u>, 211 F.3d at 499.

## <u>DISCUSSION</u>

The Additional Defendants, Wright and Amcon Corp., filed this Motion for Dismissal or Transfer on October 5, 2005. The Original Defendants, Distributing, Trinity Springs, Inc. ("TSI"), and TBG, Inc., joined this motion on December 15, 2005. They offered no specific, independent arguments on their own behalf.  No arguments are advanced on behalf of the Original Defendants in the Additional Defendant's Motion for Dismissal or Transfer or in the Additional Defendants' Reply Memo, filed December 23, 2005.  The September 29, 2005 Order already DENIED Distributing's Motion to Dismiss for Lack of Personal Jurisdiction and DENIED all Original Defendants' Motion to Transfer for Convenience.  TBG, Inc. conceded personal jurisdiction in this case. September 29, 2005 Order at 30, n. 12. Defendant TSI is no longer a party to this case.  Plaintiff's Second Amended Complaint, filed December 21, 2005, eliminated TSI

18

from the Complaint.

I.   <u>Motion to Dismiss Wright and Amcon Corp. for Lack of Personal Jurisdiction</u>

To subject a nonresident defendant to suit, both the long-arm statute of the state in which the Court sits and constitutional due process requirements must be satisfied.[5]   The Hawaii Supreme Court interprets Haw. Rev. Stat. § 634-35 as allowing jurisdiction "to the full extent permissible by the Due Process Clause of the Fourteenth Amendment."   <u>Cowan v. First Ins. Co.</u>, 608 P.2d 394, 399 (Haw. 1980); <u>accord</u> <u>Robinson Corp. v. Auto-Owners Ins. Co.</u>, 304 F. Supp. 2d 1232, 1236 n.7 (D. Haw. 2003) (citation omitted).   Because Hawaii's long-arm statute reaches to the full extent permitted by the Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction.   <u>See, e.g.</u>, <u>Schwarzenegger</u>, 374 F.3d at 800-01.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."   <u>Burger King Corp. v.  Rudzewicz</u>, 471 U.S. 462, 471-72 (1985); <u>accord</u> <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 269-70 (9th Cir. 1995).   Due process is

---

[5] Because there is no applicable federal statute and the Court sits in diversity, Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, controls. <u>See, e.g.</u>, <u>Loral Terracom v. Valley Nat'l Bank</u>, 49 F.3d 555, 559 (9th Cir. 1995).

satisfied if the Court has "either general jurisdiction or specific jurisdiction" over the defendant.  Doe v. American Natl. Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997); Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1236 (D. Haw. 2003) (citation omitted).

General jurisdiction exists only when the defendant's "activities in the state are 'substantial' or 'continuous and systematic.'"  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting Data Disc., 557 F.2d at 1287).  Plaintiff does not contend that Wright or Amcon Corp. has engaged in any activity in Hawaii that would confer general jurisdiction on the Court. (Opposition Memo at 10). Therefore, the Court must determine whether it has specific jurisdiction over the Additional Defendants.  Specific jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); accord Burger King, 471 U.S. at 475.

To determine whether specific jurisdiction exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's] contacts" with the forum state. Sher, 911 F.2d at 1361.  Specifically:

> (1) The non-resident defendant must
> purposefully direct [its] activities or

20

consummate some transaction with the forum or
resident thereof; or perform some act by
which [it] purposefully avails [itself] of
the privilege of conducting activities in the
forum, thereby invoking the benefits and
protections of its laws;

(2) the claim must be one which arises out of
or relates to the defendant's forum-related
activities; and

(3) the exercise of jurisdiction must comport
with fair play and substantial justice, i.e.
it must be reasonable.

Schwarzenegger, 374 F.3d at 801-02 (citing Lake v. Lake, 817 F.2d

1416, 1421 (9th Cir. 1987)).  "If any of the three requirements

is not satisfied, jurisdiction in the forum would deprive the

defendant of due process of law."  Omeluk, 52 F.3d at 270.

The plaintiff bears the burden of satisfying the first

two requirements of the test.  Schwarzenegger, 374 F.3d at 801-02

(citation omitted).  If the plaintiff fails to satisfy either of

these requirements, personal jurisdiction is not established in

the forum state.  Id.  If the plaintiff succeeds in satisfying

both the first and second requirement, "the burden then shifts to

the defendant to 'present a compelling case' that the exercise of

jurisdiction would not be reasonable."  Id. (quoting Burger King,

471 U.S. at 476-78).  The Court may exercise jurisdiction "with a

lesser showing of minimum contacts than would otherwise be

required if considerations of reasonableness dictate."  Haisten

v. Grass Valley Med. Reimb. Fund, Ltd., 784 F.2d 1392, 1397 (9th

Cir. 1986).

A.   <u>Purposeful Availment</u>

The first prong of the three-part specific jurisdiction test contemplates whether the defendant's "conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there." <u>Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Limited</u>, 328 F.3d 1122, 1130 (9th Cir. 2003)(quoting <u>World-Wide Volkswagon Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).   This prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of the activities at the forum; or by some combination thereof." <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme</u>, 2006 WL 60670, at *6 (9th Cir. 2006)(en banc).   This analysis prevents findings of personal jurisdiction that might otherwise arise "as the result of random, fortuitous, or attenuated contacts." <u>Burger King</u>, 471 U.S. at 479.   Plaintiff must establish that Wright and Amcon Corp. either purposefully availed themselves of the privilege of conducting activities in Hawaii, or purposefully directed their activities toward Hawaii.   Plaintiff's tort and contract claims assert that the Additional Defendants both purposefully availed themselves of the privilege of Hawaii law, and purposefully directed their activities to Hawaii.

Contract and tort cases are treated differently under the purposeful availment analysis in the Ninth Circuit. <u>Yahoo!</u>,

2006 WL 60670, at *6; Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991).  In contract cases, a court must "examine the prior negotiations and contemplated future consequences, along with the terms of the contract." Burger King, 471 U.S. at 479; Doe v. Unocal Corp. 248 F.3d 915, 924(9th Cir. 2000); Resnick v. Rowe, 283 F. Supp. 2d 1128, 1136 (D. Haw. 2003).  The formation of a contract with an out-of-state party does not alone establish sufficient contacts for personal jurisdiction over the non-resident party.  Burger King, 471 U.S. at 478; Unocal, 248 F.3d at 924.

Alternatively, in tort cases, the purposeful availment prong of the test is measured by the "effects" test introduced by the Supreme Court in Calder v. Jones 465 U.S. 783 (1984); see also Roth, 942 F.2d at 621; see also Resnick, 283 F. Supp. 2d at 1139.  The test is satisfied if the defendant is alleged to have 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state.  Id. at 1486; Harris, 382 F.3d at 1131.

In light of these standards, the Court will assess the bases of personal jurisdiction for defendants Wright and Amcon Corp. separately.

I.   Wright

William F. Wright's conduct and connection with Hawaii

23

are sufficient to support a conclusion that he purposefully availed himself of the privilege and opportunity of conducting business in Hawaii.  Wright claims that he is not subject to personal jurisdiction in Hawaii because he is a resident of California; he works in California; he has no offices or other addresses in Hawaii; he has no property or bank accounts in Hawaii; and that he only travels to Hawaii for family vacations. Wright concedes that he occasionally visits Hawaiian Natural Water Company, Inc. ("HNWC"), a subsidiary of Distributing, in Hawaii.  However, Plaintiff does not assert personal jurisdiction against Wright based on any involvement with HNWC.

Instead, Plaintiff bases personal jurisdiction on Wright's conduct directly in relation to TEAM, the formation of the License Agreements, the future consequences of the agreements, his membership in the licensee, The Beverage Group, and as an alter ego of TBG, Inc..  For the purpose of determining whether the Court has personal jurisdiction over Wright, Plaintiff alleges that Wright's contact with Hawaii commenced when he spoke with Kiely in May 2002 about the possibility of licensing the Mark.  On May 24, 2002, Kiely sent a letter to Wright summarizing their conversation, offering a draft of a license agreement, and confirming plans to meet in Hawaii in July.  On July 2, 2002, Wright met with Kiely in Hawaii to discuss further the possibility of licensing the Mark.  Plaintiff

24

alleges that this meeting was not a social gathering, but a planned business meeting that lasted over an hour.

Plaintiff alleges that, following the July meeting, Wright spent approximately $300,000 to organize a business venture that would develop and distribute food and beverage products.  In October 2002, Plaintiff alleges that Wright hired Sparks, Parsons, and Thornton to further develop the business venture.  Wright supervised them and contributed to their salaries, through Amcon Corp., with his personal funds.  On December 13, 2002, Plaintiff alleges that Wright presented and offered the business opportunity to Distributing.  Distributing decided to pursue the opportunity and reimbursed Wright for his expenses, less $70,000.

Plaintiff alleges that, on December 20, 2002, Distributing formed a wholly owned subsidiary, TBG, Inc., to control the business venture.  Plaintiff alleges that Wright was the sole original director or TBG, Inc..  Between December 21 and December 23, 2002, Wright directed Sparks to sign the License Agreements as the President and CEO of The Beverage Group. Plaintiff alleges that, at this time, Sparks was not the President or CEO of TBG, Inc., and that TBG, Inc. had no capital, shareholders, officers, or bylaws.

Plaintiff alleges that The Beverage Group is the sole licensee for use of TEAM's Mark.  Plaintiff does not know the

25

specific identity of The Beverage Group.  Plaintiff suggests that Wright is a potential member of the licensee because he funded the original venture and directed the employees of the venture. Plaintiff alleges that, since July 2004, the licensee has not fulfilled its obligations under the License Agreements. Plaintiff alleges that XTERRA energy bars and energy beverages are no longer produced, but that Wright controls the formulas for these products.  Plaintiff alleges that Wright met with Kiely on November 4, 2004 and misrepresented that TBG, Inc. was still committed to XTERRA and they would continue their relationship.

Plaintiff alleges that the License Agreements are governed by Hawaii law.  The License Agreements also contain cross-promotional duties for each party that would take place in Hawaii.  TEAM agreed to promote the licensee at all XTERRA events.  The licensee agreed to promote XTERRA events and provide energy drinks to the competitors at XTERRA events.  This conduct, contemplated by the contract, would take place when XTERRA hosted events in Hawaii.

In opposing a motion, based on written materials rather than on an evidentiary hearing, to dismiss for lack of personal jurisdiction, Plaintiff is only required to make a prima facie showing of personal jurisdiction.  See Schwarzenegger v. Fred martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  "In determining whether [the plaintiff] has met this burden,

26

uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (quoting WNS Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)); accord Pure, Ltd. v. Shasta Bev., Inc., 691 F. Supp. 1274, 1277 (D. Haw. 1988).

In light of the Plaintiff's allegations, the Court concludes that the Plaintiff has satisfied its burden of making a prima facie showing of personal jurisdiction over Wright. Plaintiff has made a prima facie case that Wright was a member of the joint venture, The Beverage Group, which signed the License Agreements as the licensee.  Wright participated in the initial discussions regarding the contract; he traveled to Hawaii for a meeting to discuss the license;[6] and he advanced personal funds that were used to explore the business venture, pay the

---

[6] Additional Defendants contend that a limited or temporary physical presence in Hawaii does not alone give rise to personal jurisdiction. See Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990); Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir. 1991).  Limited physical presence in the forum may not alone give rise to personal jurisdiction.  However, in Roth, the Court did find personal jurisdiction over the defendants because the future consequence of the contract was to make a movie in the forum state. 942 F. 2d at 622.  Here, the future consequences of the License Agreements impacted Hawaii. In Sher, the court did not find personal jurisdiction despite a contract and three visits to the forum.  911 F.2d at 1362.  However, the plaintiff in Sher pursued the defendant's services outside of the forum state.  Id.  Here, the Additional Defendants, personally or through their representatives, traveled to Hawaii on multiple occasions to discuss and negotiate the contract.

employees, and fulfill the terms of the license agreement.  The

License Agreements are governed by Hawaii law and detail

obligations for both parties that would occur in Hawaii.  Wright,

personally and through his membership in The Beverage Group,

played a significant role in the creation of the License

Agreements that contain specific provisions and future

consequences that contact Hawaii, the forum state.  His conduct

is sufficient evidence that he availed himself of the privileges

of Hawaii law.  See Burger King, 471 U.S. at 479; Unocal, 248

F.3d at 924.

The Court's personal jurisdiction over Wright is

strengthened by Plaintiff's allegations that Wright made

misrepresentations to TEAM on behalf of the licensee.  Plaintiff

alleges that Wright traveled to Hawaii in November, 2004 to

assure Kiely that the licensee was still committed to fulfilling

the obligations of the License Agreements.[7/]  The purposeful

availment prong in tort cases is evaluated by the "effects" test.

Resnick, 283 F. Supp. 2d at 1139.  The "effects" test is

satisfied if the defendant is alleged to have 1) committed an

_____

[7/] Additional Defendants have suggested that this meeting may not be
considered because "[o]nly contacts occurring prior to the event causing the
litigation may be considered." Farmers Ins. Ex. v. Portage La Prairie Mut.
Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990).  It may be true that the November
2004 meeting occurred after the events that led to the breach of contract
claims.  However, Plaintiff's cause of action alleging tortious
misrepresentations is based specifically on this event.  This meeting gave
rise to the "misrepresentations concerning [the licensee's] efforts to perform
and their commitment to continuing performance." Compl. ¶ 32.

intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state.  Id. at 1486; Harris, 382 F.3d at 1131.

Plaintiff alleges that Wright made specific misrepresentations to Kiely that the licensee would fulfill its obligations under the License Agreements.  This guarantee was made in person during a meeting in Hawaii on November 2, 2004. As a result, Plaintiff alleges that it "has suffered and will continue to suffer damages."  Compl. ¶ 32; Opposition Memo, Ex D (Kiely Depo) 144:1-4 ("not only have we lost money from last year, but we can't get anything for '05 and maybe '06). Plaintiff sufficiently alleges that Wright's conduct[8/] constituted an intentional act directed at a Hawaii corporation, damaging that Hawaii corporation, and he should have known or expected those consequences.

Finally, Plaintiff alleges that the court may assert personal jurisdiction over Wright by piercing TBG, Inc.'s corporate veil because Wright is an alter ego of TBG, Inc..[9/]

---

[8/] The Ninth Circuit has recently stated that the consequences need not even be caused by wrongful conduct to satisfy the "effects test".  Yahoo!, 2006 WL 60670, at *8.

[9/]The Court recognizes that "alter ego" liability and "piercing the corporate veil" are similar theories and are often used interchangeably.  The Hawaii Supreme Court has expressed the theories in this way: "[a] claim based on an alter ego theory is not itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural.... An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action."  Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation, 91 Haw. 224, 241; 982 P.2d 853, 870 (Haw. 1999).

The Ninth Circuit has explained "[a]lthough jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent, where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well." Howard v. Everex Systems, Inc., 228 F.3d 1057, 1069 n.17 (9th Cir. 2000). To find that a subsidiary and parent are not separate identities there must be 1) "such a unity of interest and ownership that the separate personalities of two entities no longer exist; and 2) the failure to disregard [their separate identities] would result in fraud or injustice." Harris, 328 F.3d at 1134. The standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory. San Mateo County Transit District v. Fitzgerald, 979 F.2d 1356, 1358 (9th Cir. 1992). Courts have stated that a plaintiff may not simply make "conclusory allegations" to find liability under an alter ego theory. Neilson v. Union Bank of California, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003); In re Currency Conversion Fee Antitrust Litigation, 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003). Other courts have extended this standard to require that plaintiffs make more than just "conclusory allegations" to support personal jurisdiction under an alter ego theory. RAE Systems, Inc. v. TSA Systems, Ltd., 2005 WL 1513124 at *3 (N.D. Cal. 2005); see also

Colt Studio, Inc. v. Badpuppy Enterprise, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999).

In Hawaii, courts weigh numerous factors to determine if one corporate entity is an alter ego of another. There is no one determinative factor. A court may determine there is personal jurisdiction under an alter ego theory by considering many factors, including: 1) commingling or failing to separate funds; 2) "the failure to adequately capitalize a corporation"; 3) "the total absence of corporate assets, and undercapitalization"; 4) "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation"; 5) "the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest"; 6) "the disregard of legal formalities and the failure to maintain arm's length relationships among the related entities"; 7) "the formation and use of a corporation to transfer to it the existing liability of another person or entity"; and 8) the parent's financing of the subsidiary. Robert's Hawaii School Bus, 91 Haw. at 242; 982 P.2d at 871(identifying the eight most relevant of the twenty-five factors the Hawaii Supreme Court listed).

Considering these factors, Plaintiff has alleged sufficient facts to meet the lower burden that Wright is an alter ego of TBG, Inc. for the purpose of personal jurisdiction

analysis.[10/]  Additional Defendants have already admitted that

Wright used Amcon Corp.'s business bank account as a convenient

conduit to pay personal expenses.  Reply Memo, Ex. A (Wright's

Depo.) at 49:18-50:7.  These funds, transferred from Wright to

Amcon Corp., eventually paid for the development and expenses of

The Beverage Group.  Even after TBG, Inc. was incorporated Wright

continued to provide funds to Amcon Corp. which in turn paid the

licensing fees under the agreements.  The failure to keep

separate bank accounts and the commingling of funds between

Wright, Amcon Corp., The Beverage Group, and TBG, Inc. support a

finding of alter ego personal jurisdiction over Wright.  In

addition, Plaintiff alleges that Wright demonstrated control over

TBG, Inc. as the sole director and shareholder of TBG, Inc. at

multiple stages of these events.[11/]  Plaintiff has also alleged

that TBG, Inc. was a mere shell, instrumentality or conduit of

---

[10/] Additional Defendants contend that it is not appropriate to extend
personal jurisdiction over Wright because "mere fact of sole ownership and
control does not eviscerate the separate corporate identity." Katzir's Floor
and Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004).
Furthermore, a court should not pierce the corporate veil for general
injustice, but when "it is the injustice that results only when corporate
separateness is illusory." Id.  However, the Katzir's Court was satisfied
that commingling funds and failing to keep separate bank accounts justified
the finding of alter ego liability. Id.

[11/] Additional Defendants have also argued that while "[t]he corporate
form may be ignored in cases in which the corporation is the agent or alter
ego of the individual defendant," Davis v. Metro Productions, Inc., 885 F.2d
515, 520 (9th Cir. 1989), the Davis Court declined to find personal
jurisdiction solely on the grounds that the defendants acted on behalf of the
corporation. Id.  However, in Davis, the Court found personal jurisdiction
over the defendants because they were also the only shareholders and targeted
their business at the forum state. Id. at 522.  As a result the defendants
could have "reasonably foreseen that they would be haled into [the forum
state's] courts." Id.

the other Defendants, including Wright; that TBG, Inc. was used to shield the responsible parties, including Wright, from the obligations of the License Agreements; and that TBG, Inc. had no capital or officers at the time the License Agreements were signed.  The Plaintiff's allegations are more than just conclusory allegations.  While no one factor may be sufficient to support the Plaintiff's assertion of alter ego personal jurisdiction, Plaintiff has made sufficient allegations to support that TBG, Inc. is the alter ego of Wright and/or other entities.

ii.  <u>Amcon Corp.</u>

Amcon Corp.'s conduct and connection with Hawaii are sufficient to support a conclusion that it purposefully availed itself of the privileges and opportunity of conducting business in Hawaii.  Amcon Corp. claims that it is not subject to personal jurisdiction in Hawaii because Amcon Corp. is a Delaware corporation with its principal place of business in Omaha, Nebraska; it owns a wholesale beer distributing company that operates in Nebraska; it keeps corporate records in Nebraska and California; it does not do any business in Hawaii; none of its directors or employees work or reside in Hawaii; it does not operate offices or advertise in Hawaii; and it does not own property in Hawaii.  Plaintiff does not dispute any of these assertions.

Plaintiff does allege that Amcon Corp.'s account paid expenses for the new business venture; salaries for Sparks, Parsons, and Thornton; and the first four installments, totaling $10,000, under the License Agreements to TEAM.  Altogether, these expenses totaled approximately $300,000.  Additional Defendants assert that the "Amcon Corp. checking account was simply used as a convenient way to pay expenses before Distributing approved [TBG, Inc.] as a subsidiary and funded it."  Reply Memo at 10.

Plaintiff alleges that Amcon Corp. participated in the negotiations with TEAM about the Licence Agreements and was listed as the licensee on the October 6, 2002 draft.  Plaintiff alleges that Amcon Corp., like Wright, is a potential member of the licensee, The Beverage Company.  Plaintiff alleges Distributing paid Amcon Corp. for management services rendered in 2002-2004.

In light of the Plaintiff's allegations, the Court concludes that the Plaintiff has also satisfied its burden of making a prima facie showing of personal jurisdiction for Amcon Corp..[12]  Amcon Corp. is allegedly a "zero-balance" account, but it also owns a beverage distribution company in Nebraska.  Amcon Corp. does not have clear and separate bank accounts from Wright, The Beverage Group, TBG, Inc., or Distributing.  Amcon Corp.'s

_____

[12] See discussion, supra, Discussion Part I(A)(i) for a full explanation of personal jurisdiction in relation to contract claims, tort claims, and under alter ego liability.

34

funds were commingled with the funds of Wright, The Beverage Group, TBG, Inc., and Distributing.  Amcon Corp. actually produced the checks to fund the business venture and to pay TEAM in accordance with the License Agreements.  Amcon Corp. is a potential member of the licensee, The Beverage Group.

B.   <u>Arising Out of Forum Related Activities</u>

The second prong of the jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." <u>Harris</u>, 382 F.3d at 1129 (quoting <u>Core-Vent Corp. v. Nobel Industries AB</u>, 11 F.3d 1482, 1485 (9th Cir. 1993); <u>Loral Terracom</u>, 49 F.3d at 561 (the second prong is "met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen.")

I.   <u>Wright</u>

Plaintiff's claims would not have arisen but for Wright's role in meeting with Kiely in Hawaii; negotiating the subject agreements; personally funding the research and development of the business venture; personally funding the initial payments in accordance with the License Agreements; Wright's meeting to reassure Kiely in Hawaii; and Wright's alleged status as a signatory of the agreements through his membership in The Beverage Group.  The Court finds that Wright's contacts with Hawaii satisfy the second prong of the analysis for specific jurisdiction.

ii.  Amcon Corp.

Plaintiff's claims would not have arisen but for Amcon Corp.'s role in payment of starting costs; payment of salaries; payment of licensing fees to TEAM; participating in the negotiations; and Amcon Corp.'s alleged status as a signatory of the agreements through its membership in The Beverage Group.  The Court finds that Amcon Corp.'s contacts with Hawaii satisfy the second prong of the analysis for specific jurisdiction.

C.   Reasonableness

Because Plaintiff has succeeded in satisfying both the first and second requirements of the jurisdictional analysis, "the burden . . . shifts to the defendant[s] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 801-02  (quoting Burger King, 471 U.S. at 476-78).  The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate." Haisten v. Grass Valley Med. Reimb. Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).  The reasonableness determination requires the Court to consider the following factors:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;

(4) the forum state's interest in
adjudicating the dispute;

(5) the most efficient judicial resolution of
the controversy;

(6) the importance of the forum to the
plaintiff's interest in convenient and
effective relief; and

(7) the existence of an alternative forum.

Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88

(9th Cir. 1993) (citation omitted).   The Court balances all seven

factors, recognizing that none of the factors is dispositive in

itself.   Id.

I.   Wright

1

The Court first considers the extent of Wright's

purposeful interjection into the forum state.   "The degree of

interjection is a factor to be weighed in assessing the overall

reasonableness of the jurisdiction."   Panavision Intern., L.P. v.

Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998)(quoting Core-Vent,

11 F.3d at 1488).   "The smaller the element of purposeful

interjection, the less is jurisdiction to be anticipated and the

less reasonable is its exercise."   Core-Vent, 11 F.3d at

1488(citation omitted).   Here, Wright interjected himself into

Hawaii by traveling to Hawaii to meet with Plaintiff regarding

the subject licenses.   He funded the business venture through

Amcon Corp. and paid Sparks, Parsons, and Thornton to travel to

Hawaii to continue negotiations.  Plaintiff has also made a prima facie showing that Wright entered, through his alleged membership in The Beverage Group, the agreements which explicitly state that they "shall be governed by and construed . . . in accordance with the laws of the State of Hawaii *as applied to contracts entered into and to be performed entirely within the State of Hawaii*." (Compl., Exs. 1 and 2) (emphasis added).  In addition, the License Agreements provide that the parties will promote each other and provide products in Hawaii.

Because Wright interjected himself into Hawaii to a palpable degree and the Court found that Wright's contacts with Hawaii were sufficient to establish purposeful availment, the Court finds that this factor weighs in favor of Plaintiff.  See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) (finding that the factor of purposeful interjection is analogous to the purposeful availment analysis).

2

The Court next considers the burden of defending a lawsuit in Hawaii on Wright .  "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th

38

Cir. 1998) (internal citations omitted).  As discussed above,
Wright resides and works in California.  Motion for Dismissal or
Transfer at 15, 17.  Amcon Corp.'s principal place of business is
in Nebraska and it does not have employees or offices in Hawaii.
Id. at 1.  Amcon Corp. states that it keeps the majority of its
books and records in Nebraska.  Id. at 3.  The Additional
Defendants state that all of the percipient witnesses reside in
California, with the exception of Kiely and Mike James ["James"],
Distributing's Secretary and CFO.  Id. at 4.  Kiely resides in
Hawaii and James resides in Nebraska. It appears that Wright will
be required to obtain documents and witnesses from outside the
forum state, irrespective of whether the action proceeds in this
forum or in California as requested by Defendants.  "The
inconvenience of litigating in Hawaii does not amount to a
deprivation of due process."  Resnick, 283 F. Supp. 2d at 1141;
see Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1069
(D. Haw. 2000).  Moreover, this Court has observed that "[r]ecent
advancements in communication and transportation . . . have
greatly reduced the inconvenience once associated with defending
in another forum."  Robinson Corp. v. Auto-Owners Ins. Co., 304
F. Supp. 2d 1232, 1240 (D. Haw. 2003)(citing Panavision Intern.,
L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998)).  This
factor favors Wright slightly.

3

        The next factor is the extent to which the exercise of
jurisdiction would conflict with the sovereignty of Wright's
state.  There is no evidence presented to demonstrate a conflict
with the sovereignty of California, Wright's place of residence.
Moreover, the sovereignty of a defendant's state is not a
significant consideration in actions between citizens of the
United States.  Decker Coal Co. v. Commonwealth Edison Co., 805
F.2d 834, 841 (9th Cir. 1986).  This factor weighs in favor of
Plaintiff.

4

        The Court next considers Hawaii's interest in
adjudicating the suit.  Hawaii has a strong interest in providing
an effective forum for parties seeking redress for the breach of
agreements entered into in Hawaii.  Here negotiations regarding
the agreements took place in Hawaii, Plaintiff is a Hawaii
company, and both License Agreements state that they "shall be
governed by and construed . . . in accordance with the laws of
the State of Hawaii *as applied to contracts entered into and to
be performed entirely within the State of Hawaii*."  (Compl., Exs.
1 and 2) (emphasis added).  This factor weighs heavily in favor
of Plaintiff.

5

        The next factor concerns the efficiency of the forum.

"Unlike the burden on the defendant, this factor involves a comparison of alternative forums." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993). Here, exhibits and witnesses relevant to the action are likely to be located in at least three states and thus the suit will necessarily require inconvenience due to travel and transportation. However, the efficiency of this forum is furthered by the fact that Hawaii law governs the subject agreements. In addition, this factor is no longer weighed heavily considering the advances in transportation and communication. Panavision, 141 F.3d at 1323. This factor weighs slightly in favor of Plaintiff.

6

The Court next considers the importance of the forum to Plaintiff's interest in convenient and effective relief. As discussed above, Plaintiff is a Hawaii company and has its principal place of business in Honolulu, Hawaii. (Compl. ¶ 4). Plaintiff's witnesses and exhibits are likely to be located in Hawaii and the agreements state that they are subject to the laws of Hawaii. This factor weighs heavily in favor of Plaintiffs.

7

Finally, the Court must determine whether an adequate alternative forum exists. The claims against the Defendants could possibly have been brought in the Central or Southern District of California. Plaintiff bears the burden of proving

41

the unavailability of an alternate forum.  See Core-Vent Corp., 11 F.3d at 1490 (citing Pacific Atlantic Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1331 (9th Cir. 1985).  Plaintiff has not satisfied this burden of proving that the Central or Southern District of California are unavailable alternate forums.  This factor weighs in favor of Wright.

8

The Court concludes, based on these factors, that Wright has failed to meet his burden of presenting a compelling case that this Court's exercise of jurisdiction over it would be unreasonable.  The Court concludes that the exercise of jurisdiction over Distributing will comport with fair play and substantial justice and will thus be reasonable.[13]

ii.  Amcon Corp.

1

The Court first considers the extent of Amcon Corp.'s purposeful interjection into the forum state.  "The degree of interjection is a factor to be weighed in assessing the overall reasonableness of the jurisdiction."  Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998)(quoting Core-Vent, 11 F.3d at 1488).  "The smaller the element of purposeful

---

[13] The Court further finds that the exercise of jurisdiction over Wright will comport with due process and that Wright's contacts with Hawaii, as alleged by Plaintiff, satisfy Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, subsection (a)(1) (transacting business within Hawaii).

interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Core-Vent, 11 F.3d at 1488(citation omitted).  Here, Amcon Corp. interjected itself into Hawaii by providing checks to fund the business venture; pay Sparks, Parsons, and Thornton; and fund at least one trip to Maui, Hawaii for negotiations.  Amcon Corp. participated in the negotiations to some extent as it was considered a potential licensee.  Plaintiff has also made a prima facie showing that Amcon Corp. entered, through its alleged membership in The Beverage Group, the agreements which explicitly state that they "shall be governed by and construed . . . in accordance with the laws of the State of Hawaii *as applied to contracts entered into and to be performed entirely within the State of Hawaii*." (Compl., Exs. 1 and 2) (emphasis added).  In addition, the License Agreements provide that the parties will promote each other and provide products in Hawaii.

Because Amcon Corp. interjected itself into Hawaii to a palpable degree and the Court found that Amcon Corp.'s contacts with Hawaii were sufficient to establish purposeful availment, the Court finds that this factor weighs in favor of Plaintiff. See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) (finding that the factor of purposeful interjection is analogous to the purposeful availment analysis).

2

The Court next considers the burden of defending a lawsuit in Hawaii on Amcon Corp..  "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal citations omitted).  As discussed above, Wright resides and works in California.  Motion for Dismissal or Transfer at 15, 17.  Amcon Corp.'s principal place of business is in Nebraska and it does not have employees or offices in Hawaii. Id. at 1.  Amcon Corp. states that it keeps the majority of its books and records in Nebraska.  Id. at 3.  The Additional Defendants state that all of the percipient witnesses reside in California, with the exception of Kiely and Mike James ["James"], Distributing's Secretary and CFO.  Id. at 4.  Kiely resides in Hawaii and James resides in Nebraska. It appears that Amcon Corp. will be required to obtain documents and witnesses from outside the forum state, irrespective of whether the action proceeds in this forum or in California as requested by Defendants.  "The inconvenience of litigating in Hawaii does not amount to a deprivation of due process." Resnick, 283 F. Supp. 2d at 1141; see Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1069

(D. Haw. 2000).  Moreover, this Court has observed that "[r]ecent advancements in communication and transportation . . . have greatly reduced the inconvenience once associated with defending in another forum."  Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1240 (D. Haw. 2003)(citing Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998)).  This factor favors Amcon Corp. slightly.

3

The next factor is the extent to which the exercise of jurisdiction would conflict with the sovereignty of Amcon Corp.'s state.  Here, none of the events giving rise to the suit occurred in Delaware nor Nebraska, the states where Amcon Corp. is incorporated and has its principal place of business.  Moreover, the sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986).  This factor weighs in favor of Plaintiff.

4

The Court next considers Hawaii's interest in adjudicating the suit.  Hawaii has a strong interest in providing an effective forum for parties seeking redress for the breach of agreements entered into in Hawaii.  Here negotiations regarding the agreements took place in Hawaii, Plaintiff is a Hawaii company, and both License Agreements state that they "shall be

45

governed by and construed . . . in accordance with the laws of the State of Hawaii *as applied to contracts entered into and to be performed entirely within the State of Hawaii.*" (Compl., Exs. 1 and 2) (emphasis added).  This factor weighs heavily in favor of Plaintiff.

5

The next factor concerns the efficiency of the forum. "Unlike the burden on the defendant, this factor involves a comparison of alternative forums." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993).  Here, exhibits and witnesses relevant to the action are likely to be located in at least three states and thus the suit will necessarily require inconvenience due to travel and transportation.  However, the efficiency of this forum is furthered by the fact that Hawaii law governs the subject agreements.  In addition, this factor is no longer weighed heavily considering the advances in transportation and communication. Panavision, 141 F.3d at 1323.  This factor weighs slightly in favor of Plaintiff.

6

The Court next considers the importance of the forum to Plaintiff's interest in convenient and effective relief.  As discussed above, Plaintiff is a Hawaii company and has its principal place of business in Honolulu, Hawaii.  (Compl. ¶ 4). Plaintiff's witnesses and exhibits are likely to be located in

Hawaii and the agreements state that they are subject to the laws of Hawaii.  This factor weighs heavily in favor of Plaintiffs.

7

Finally, the Court must determine whether an adequate alternative forum exists.  The claims against the Defendants could possibly have been brought in the Central or Southern District of California.  Plaintiff bears the burden of proving the unavailability of an alternate forum.  See Core-Vent Corp., 11 F.3d at 1490 (citing Pacific Atlantic Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1331 (9th Cir. 1985).  Plaintiff has not satisfied this burden of proving that the Central or Southern District of California are unavailable alternate forums.  This factor weighs in favor of Amcon Corp..

8

The Court concludes, based on these factors, that Amcon Corp. has failed to meet its burden of presenting a compelling case that this Court's exercise of jurisdiction over it would be unreasonable.  The Court concludes that the exercise of jurisdiction over Amcon Corp. will comport with fair play and substantial justice and will thus be reasonable.[14]

II.  Motion to Dismiss Wright and Amcon Corp. for Improper Venue

"The district court of a district in which is filed a

---

[14] See discussion, supra, n. 13.

47

case laying venue in the wrong division or district shall
dismiss." 28 U.S.C. § 1406(a).  Defendants assert that venue is
improper if the court lacks personal jurisdiction over the
parties.  Motion for Dismissal and Transfer at 12.  However, the
Court concludes that personal jurisdiction does exist over the
Additional Defendants in this case.  Therefore, the Court denies
this motion.

III.  Motion to Transfer to Central or Southern California for
      Lack of Personal Jurisdiction or Improper Venue

        A court may transfer a case to cure a want of personal
jurisdiction or improper venue.  28 U.S.C. § 1631; 28 U.S.C. §
1406(a).  The Court concludes that personal jurisdiction exists
over the Additional Defendants. See discussion, supra, Discussion
Part I.  The Court concludes that the venue is proper.  See
discussion, supra, Discussion Part II. Therefore, the Court
denies Defendants' Motion to Transfer for Lack of Personal
Jurisdiction or Improper Venue.

IV.  Motion to Transfer to Central or Southern California for
     Convenience and the Interests of Justice

        28 U.S.C. § 1404(a) provides: "For the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought."  "The purpose of this
section is to prevent the waste of time, energy, and money and to
protect litigants, witnesses and the public against unnecessary

48

inconvenience and expense." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).   A motion to transfer venue pursuant to Section 1404(a) requires the Court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case.   Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

The Court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the cost of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.   Id.   In addition, a court should consider the presence of a forum selection clause as a significant factor in the analysis.   Id. at 499.   "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."   Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted).   Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action.   Jones, 211 F.3d at 499.

The License Agreements state that they are to "be governed by and construed . . . in accordance with the laws of the State of Hawaii as applied to contracts entered into and to be performed entirely within the State of Hawaii." (Compl., Exs. 1 & 2). This "significant factor" weighs heavily in favor of the Plaintiff. <u>Jones</u>, 211 F. 3d at 499.

As to the first factor, the subject agreements were the result of negotiations which included Wright's summer 2002 meeting with Kiely, in Honolulu, Hawaii to discuss the possibility of licensing the Mark. (Compl. at ¶ 12; Opposition Memo, Ex. C (Wright Depo.) at 28:11-18). The negotiations also included Sparks, Parsons, and Thornton's trip in October 2002 to Hawaii to see the XTERRA World Championships on Maui and to meet with TEAM about possible license agreements. September 29, 2005 Order at 9. While Additional Defendants allege that Sparks signed the agreements in California, Kiely appears to have signed the documents in Hawaii. The agreements also state that they are to be treated as contracts "entered into . . . entirely within the State of Hawaii." (Compl., Exs. 1 & 2). This factor favors Plaintiff.

As to the second factor, the state that is most familiar with the governing law, the agreements contain an explicit choice of Hawaii law provision. The second factor strongly favors Plaintiff because a California court does not

have the same level of experience with Hawaii contract law as this Court.  See Hi-Pac, 980 F. Supp. 1142.  The third factor also favors Plaintiff because Plaintiff selected this forum and "'there is normally a strong presumption in favor of honoring the plaintiff's choice of forum.'"  Id. at 1140 (quoting Creative Technology, Ltd. v. Aztech Sys., Ltd., 61 F.3d 696, 703 (9th Cir. 1995)).

As to the fourth factor, the respective parties' contacts with the forum, Plaintiff is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  The Additional Defendants are not registered to do business in Hawaii, do not maintain offices in Hawaii, and have limited contacts with Hawaii outside the events that led to this cause of action.  This factor is neutral.

As to the fifth factor, contacts relating to the plaintiff's cause of action in the chosen forum, the agreements were negotiated in at least two meetings with Plaintiff in Hawaii.  The License Agreements state that they are "entered into and to be performed entirely within the State of Hawaii."  Compl., Exs. 1 & 2.  Payments made pursuant to the agreements were sent to Plaintiff in Hawaii.  The contract contemplated promotions and product placement at events in Hawaii.  The fifth factor favors Plaintiff because the bulk of the contacts relevant to Plaintiff's claims occurred in Hawaii.

The sixth factor the Court will consider is the differences in the costs of litigation in the two forums. Plaintiff is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  Plaintiff's documents and witnesses are likely to be located in Hawaii.  Amcon Corp.'s principal place of business is in Nebraska and Amcon Corp. states that it keeps most of its documents in Nebraska or California. (Motion to Dismiss and Transfer at 3).  Wright is a California resident. (Compl. ¶ 9).  Sparks, Thornton, and Parsons are also residents of California. (Motion to Dismiss and Transfer at 4). Bob Russell, a TEAM employee, also resides in California. <u>Id</u>. Exhibits and witnesses relevant to the action are likely to be located in several states and thus the suit will necessarily require expense due to travel and transportation.  However, as the Original Defendants noted in their Motion to Transfer, "developments in electronic conveyance have reduced the cost of document transfer . . . ." September 29, 2005 Order at 50. Moreover, Plaintiff states that it has already: (1) obtained videotaped depositions of Wright, Sparks, Thornton, Parsons, as well as the designated representative of Distributing, TBG, Inc., and Amcon Corp.; and (2) obtained documents from all these entities.  September 29, 2005 Order at 15.  This evidence can be presented in Hawaii as easily as in California.  This factor is neutral.

52

The seventh factor, availability of compulsory process to compel attendance of unwilling non-party witnesses, is not relevant in this case.  The considerations underlying the eighth factor, ease of access to sources of proof, are subsumed within the discussion of the sixth factor above.  Finally, the Court considered the convenience of the witnesses and parties.[15/]  While the Court recognizes that several witnesses will have to travel from California and elsewhere to Hawaii, the Court finds that this inconvenience is not so great as to overcome the strong presumption in favor of honoring Plaintiff's choice of forum.  Consideration of the factors discussed above does not demonstrate that the Central District or Southern District of California is a more appropriate forum for this action.  The Court accordingly denies Defendants' motion for change of venue.

---

[15/] Additional Defendants cite to three cases in support of their motion to transfer venue for convenience.  In Paul v. International Precious Metals Corp., 613 F. Supp. 174, 179 (S.D. Miss. 1985), Additional Defendants contend that the Court determines convenience of the party and witnesses is the most significant factor.  However, the Court actually gives the greatest weight to the Plaintiff's choice of forum.  That factor is only overlooked because the Plaintiff selected a forum other than that of his residence.  In this matter, TEAM chose the District of Hawaii as the forum, where it is located.  In Jewelmasters, Inc. v. May Dept. Stores Co., 840 F. Supp. 893, 895-96 (S.D. Fla. 1993), the Court highly values the location of the witnesses in the analysis.  However, the Florida Court excludes critical factors articulated in the Ninth Circuit's analysis such as the plaintiff's forum choice and forum selection provisions of agreements.  See Jones, 211 F.3d at 499.  In Loftin v. Maritime Overseas Corp., 1995 AMC 982, 986-90 (D. Alaska 1994), the Court holds that convenience and access to proof outweigh the Plaintiff's choice of forum.  Again, this conclusion is only drawn after the Court establishes that the Plaintiff does not reside in the forum he selected.  Again, Plaintiff TEAM has selected the forum state where it is located.  For these reasons, the Court is not persuaded by the cases offered in support of the Motion to Transfer.

## CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; (2) DENIES Defendants' Motion to Transfer for Lack of Personal Jurisdiction or Improper Venue; and (3) DENIES Defendants' Motion to Transfer for Convenience.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 18, 2006.



_____
Alan C. Kay
Senior United States District Judge

Television Events & Marketing, Inc. v. Amcon Distributing Company, et al., CV. NO. 05-00259 ACK/KSC. ORDER DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO TRANSFER FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE; AND DENYING AMCON CORPORATION AND WILLIAM F. WRIGHT'S MOTION TO TRANSFER FOR CONVENIENCE.