IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TELEVISION EVENTS &               )     Civ. No. 05-00259 ACK/KSC
MARKETING, INC., a Hawaii        )
Corporation,                      )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )
AMCON DISTRIBUTING CO., a         )
Delaware Corporation; THE         )
BEVERAGE GROUP, INC., a           )
Delaware Corporation; THE         )
BEVERAGE GROUP aka AMCON          )
BEVERAGE COMPANY; AMCON           )
CORPORATION, a Delaware           )
Corporation; and WILLIAM F.       )
WRIGHT,                           )
                                  )
          Defendants.             )
_____  )
                                  )
AMCON DISTRIBUTING CO., a         )
Delaware Corporation; and         )
THE BEVERAGE GROUP, INC.,         )
a Delaware Corporation,           )
                                  )
          Counter Claimants,      )
                                  )
     v.                           )
                                  )
TELEVISION EVENTS &               )
MARKETING, INC., a Hawaii         )
Corporation; ARCHIE J.            )
THORNTON; and THE THORNTON        )
WORKS, INC., a California         )
Corporation,                      )
                                  )
          Counter Defendants.     )
_____  )

## ORDER GRANTING IN PART AND DENYING IN PART
## COUNTER DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

### BACKGROUND

The subject of this controversy arises out of Television Events & Marketing, Inc.'s ("Plaintiff" or "TEAM") allegations that the following Defendants are liable for the breach of two License Agreements and misrepresentations: (1) AMCON Distributing Company ("Distributing"); (2) The Beverage Group, Inc. ("TBG, Inc."); (3) The Beverage Group ("Group"); (4) William F. Wright ("Wright"); and (5) AMCON Corporation ("AC"). The Court has issued the following three substantive written Orders in this case:

> (1) Order Denying Distributing's Motion To Dismiss for Lack of Personal Jurisdiction; Granting Defendants' Request to Amend their Motion to Dismiss and for Summary Judgment and to Transfer Venue; Denying Defendants Distributing and TBG, Inc.'s Motion for Summary Judgment as to Plaintiff's First Claim for Relief and Not Addressing the Motion as to Group, Wright, nor AC; Denying Defendants Distributing and TBG, Inc.'s Motion for Summary Judgment as to the Plaintiff's Second Claim for Relief and Not Addressing the Motion as to Wright; and Denying Defendants' Motion To Transfer Venue (hereafter "September 29, 2005 Order");

> (2) Order Denying AC and Wright's Motion to Dismiss for Lack of Personal Jurisdiction; Denying AC and Wright's Motion to Transfer for Lack of Personal Jurisdiction or Improper Venue; and Denying AC and Wright's Motion to Transfer for Convenience (hereafter "January 18, 2006 Order"); and

> (3) Order Denying Plaintiff's Motion For Partial Summary Judgment; Granting in Part and Denying in Part Defendants AC and Wright's Motion for Summary Judgment;

> Denying Defendant TBG, Inc.'s Motion for Partial
> Summary Judgment; and Granting in Part and Denying in
> Part Defendant Distributing's Motion for Summary
> Judgment (hereafter "April 25, 2006 Order").

The Court presented the facts and procedural history in great

detail in those three preceding orders.  The following summary

highlights the pertinent developments since the Court's April 25,

2006 Order.

On May 30, 2006, Defendants Distributing and TBG, Inc.

filed a Motion for Leave to File an Amended Answer to the Second

Amended Complaint, Counterclaim and for Leave to Name and Serve

Additional Counterclaim Defendant, Archie J. Thornton

("Thornton").  The following day Defendants AC and Wright filed a

Motion to Amend/Correct their Answer to the Amended Complaint.

Defendants filed the motions based on allegations that Plaintiff

failed to disclose documents relating to its relationship with

Thornton despite Defendants' October 5, 2005 discovery request.

Defendants claim that relevant documents, including a 1997 letter

from TEAM to Thornton and a May 2003 cancelled check

(Counterclaim Exhibits 1 and 2), were not produced until April

24, 2006, when Thornton responded to Defendants' subpoena.

Defendants assert that the significance of these records is

great, as they indicate that Thornton secretly acted as an agent

for TEAM in recruiting Distributing and TBG, Inc. as potential

licensees and in the subsequent negotiations.[1]

Plaintiff opposed the motions and the parties appeared before Magistrate Judge Chang on July 3, 2006.  Magistrate Judge Chang granted Distributing and TBG, Inc.'s motion and AC and Wright's motion at the hearing, and then issued written orders to that effect on July 28, 2006 and August 11, 2006.

On July 5, 2006, Distributing and TBG, Inc. ("Counter Claimants") filed an Amended Answer to the Second Amended Complaint along with a Counterclaim against TEAM, Thornton, and The Thornton Works, Inc. ("Counter Defendants").  AC and Wright filed an Amended Answer to the Complaint on July 7, 2006.

Counter Defendant TEAM filed a Motion to Dismiss Counter Claimants Distributing and TBG, Inc.'s Counterclaim on July 28, 2006 ("Motion").  Counter Claimants filed a Memorandum in Opposition to TEAM's Motion to Dismiss on August 17, 2006 ("Opposition").  On August 24, 2006, TEAM filed a Reply to Counter Claimants' Opposition ("Reply").

The parties appeared before the Court for a hearing on Counter Defendant TEAM's Motion to Dismiss on September 5, 2006.

---

[1]  The Court notes, but does not consider for the purpose of disposing of the Motion to Dismiss, Counter Defendant's assertions that Thornton shared offices with William Wright for many years, that they discussed Thornton's relationship with TEAM on numerous occasions, that Wright's son assisted Thornton in securing license agreements for TEAM, and that Thornton introduced Wright to TEAM for the purpose of arranging a license agreement.  Reply at 1.

## STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 334 (9th Cir. 1990); Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory.  Balistreri, 909 F.2d at 699, Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1979).  The Court must determine whether or not it appears to a certainty under

existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims.  Id.

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as lack of jurisdiction or the statute of limitations.  2A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, ¶12.07 at 12-68 to 12-69 (2d ed. 1991 & supp. 1191-92) (citing Imbler v. Pachtman, 424 U.S. 409 (1976) (emphasis added)).

## DISCUSSION

In the wake of the documents and information produced by Thornton in response to Defendants' April 10, 2006 subpoena, Counter Claimants assert the following five claims against Counter Defendant TEAM:[2] (1) Breach of Fiduciary Duty, (2) Unjust Enrichment/Restitution, (3) Duty of Good Faith and Fair Dealing, (4) Fraud/Misrepresentation, and (5) Punitive Damages.  TEAM moves to dismiss all claims against it arguing that each claim fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  Motion at 2.  The Court addresses each count only as it relates to Counter Defendant TEAM at this time as Counter Defendants Thornton and The Thornton Works, Inc. have not yet responded to the Counterclaim and accordingly have not joined

---

[2] Count 1 - Breach of Fiduciary Duty, is asserted against Counter Defendants Thornton and The Thornton Works, Inc., but not TEAM.

in the motion.

I.    **Count 2: Breach of Fiduciary Duty (TEAM)**

Counter Claimants do not actually assert that TEAM owed them a fiduciary duty, but rather that TEAM is liable for acting in a manner that caused Thornton to breach his fiduciary duty to Counter Claimants.  Counterclaim ¶¶ 71-79.  They rely on legal principles from the Restatement (Second) of Torts § 876 ("Section 876"),[3] the Restatement (Second) of Agency § 312 ("Section 312"),[4] and Restatement (First) of Restitution § 138 ("Section 138")[5] as the bases for their claims of breach of fiduciary duty. Requiring either that a person "giv[es] substantial assistance," "intentionally caus[es] or assist[s]," or "collude[s]," each of the sections of the respective Restatements recognize liability for an overt act by a third party that disrupts the duty of a

_____

[3]    "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and *gives substantial assistance or encouragement* to the other so to conduct himself . . . ."  Restatement (Second) of Torts § 876(b)(1978) (emphasis added).

[4]    "A person who, without being privileged to do so, *intentionally causes or assists* an agent to violate a duty to his principal is subject to liability to the principal."  Restatement (Second) of Agency § 312 (1958) (emphasis added).

[5]    "A third person who has *colluded* with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom, is under a duty of restitution to the beneficiary."  Restatement (First) of Restitution § 138(2) (1937) (emphasis added).

fiduciary or agent to another.

As Counter Claimants assert, Hawaii courts have considered and adopted various sections of the Restatement (Second) of Torts on numerous occasions. Bynum v. Magno, 106 Haw. 81, 86 n. 12 (2004) (citing Hac v. Univ. of Hawaii, 102 Haw. 92, 106 (2003); Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386 (1987); Ono v. Applegate, 62 Haw. 131, 137-38 (1980); Stewart v. Budget Rent-A-Car Corp., 52 Haw. 71, 75 (1970); Chun v. Park, 51 Haw. 462, 468 (1969)). Similarly, Hawaii courts frequently adopt and apply sections of the Restatement (Second) of Agency. See e.g., Association of Apartment Owners of Maalaea Kai, Inc. v. Stillson, 108 Haw. 2, 29 (2005); State v. Hoshijo ex rel. White, 102 Haw. 307, 318 (Haw. 2003); Corps Constr., Ltd. v. Hasegawa, 55 Haw. 474, 476 (1974); Pancakes of Hawaii, 85 Haw. at 308.

The Hawaii Supreme Court recently considered the viability of a claim brought pursuant to Section 876. See Tahara v. Matson Terminals, Inc., 111 Haw. 16, 2006 WL 1793720, *3 (2006).[6] In Tahara, the court went as far as to lay out the elements of a Section 876 claim before ruling that the specific facts of the case did not give rise to a claim under the Restatement. 2006 WL 1793720, at *3. As the Hawaii Supreme

---

[6] The Court finds this unpublished decision to be illustrative, although it is not relying on it as precedent pursuant to Haw. R. App. P. 35(c).

Court has now clearly recognized and applied Section 876 in Tahara, which is closely related to Sections 312 and 138, this Court concludes that a third party's interference with one's fiduciary duty to another is actionable under Hawaii law.

Counter Defendant reads too much into the holdings of Nakamoto v. Hartley, 758 F. Supp. 1357, 1366 (D. Haw. 1991), and Unity House, Inc. v. North Pacific Investments, Inc., 918 F. Supp. 1384, 1390 (D. Haw. 1996), as the bases for its contention that aiding and abetting a breach of fiduciary duty is not a viable cause of action in Hawaii.  In Nakamoto, the court merely held that Hawaii courts had given no indication as to whether the defendant could be liable for aiding and abetting fraud when he made a misrepresentation to a third party upon which the plaintiffs did not directly rely.  758 F. Supp. at 1366.  The court acknowledged that when "a person injects himself into a business transaction, 'he incurs a duty to disclose all material information necessary to prevent representations he makes, either directly or indirectly, from misleading other parties.'"  Id. at 1366 (citing National Consumer Co-op. Bank v. Madden, 737 F. Supp. 1108, 1112 (D. Haw. 1990)).  In fraud cases, Hawaii law requires not just a misrepresentation, but also reliance by the plaintiffs.  Nakamoto, 758 F. Supp. at 1366.  Presented with no factual allegations indicating that the plaintiffs relied on the defendant's statements, the court concluded that the critical

9

reliance element of fraud was absent and there could be no claim
for aiding and abetting fraud.   *Id.*

Citing *Nakamoto*, this Court, in *Unity House*, similarly
concluded that the plaintiff could not *maintain* a cause of action
for aiding and abetting fraud.  918 F. Supp. at 1390.  The *Unity
House* plaintiff did not contest the defendants' claim that
plaintiff could not maintain such a claim.   *Id.*  Ultimately, this
Court did not have to make a determination as to whether an
aiding and abetting fraud claim existed in Hawaii because the
plaintiff submitted no evidence to indicate that defendants knew
that the third party was breaching a duty to the plaintiff.   *Id.*
at 1390 n. 5.  In both *Nakamoto* and *Unity House*, the courts
recognized that Hawaii had not indicated whether a cause of
action for aiding and abetting fraud existed, but neither court
reached the issue because the respective plaintiffs failed to
make any allegations to support such a claim.  These rulings in
no way foreclose the possibility of an aiding and abetting a
breach of fiduciary duty claim under Hawaii law.  The Court will
now assess Counter Claimants' allegations to determine whether
they have pled facts sufficient to sustain their claim.

Counter Claimants allege that Thornton "was, and acted
as, a disclosed agent of Distributing or the Licensee concerning
the License Agreements, and upon [TBG, Inc.'s] incorporation, as
[TBG, Inc.'s] agent concerning the License Agreements.

Counterclaim ¶ 49.  During this period, they allege that TEAM "caused Thornton to breach his fiduciary duty to Distributing, TBG, Inc., or the Licensee, by having Thornton act as TEAM's undisclosed agent concerning the License Agreements and hide his agency relationship with TEAM concerning the XTERRA brand." Counterclaim ¶ 79.  Counter Claimants assert that TEAM entered into a contract with Archie Thornton and Associates to be their sales representative company in May 1997.  Counterclaim Exhibit 1 at 1.  Significantly, the agreement indicated that Thornton's company would "negotiate and secure licensing agreements for [] various events and logos" and "pursue licensing agreements with major companies that would derive benefit from securing the marketing and merchandising right to any of [TEAM's] logos . . . includ[ing] . . . XTERRA . . . ."  Counterclaim Exhibit 1 at 2.

Furthermore, Counter Claimants allege that TEAM and Thornton's relationship expanded in April 2003, when XTERRA signed a consulting agreement with Thornton and The Thornton Works, Inc., for assistance in securing a company or investor to acquire TEAM.  Counterclaim ¶ 32.

Finally, TEAM then paid Thornton $25,000 on May 20, 2003 with a check that contained the following entry on the memo line: "Commission TBG [The Beverage Group], Hype & Hwn Springs." Counterclaim Exhibit 2.  The check also contained a handwritten note stating "Re: Consulting & Friendship."  Id.

As alleged, these facts are sufficient to support a claim that survives a motion to dismiss.  Under the Restatements of Tort, Agency, or Restitution, TEAM may be liable for "substantially" or "intentionally" assisting or "colluding" with Thornton to breach his fiduciary duty to both Distributing and TBG, Inc. that arose from his role as their agent.  For these reasons, the Court DENIES Counter Defendant TEAM's Motion to Dismiss Count 2.

## II.  **Count 3: Unjust Enrichment/Restitution**

The Hawaii Supreme Court recently explored the general parameters of an unjust enrichment claim, recognizing that limited jurisprudence involving such a claim existed in Hawaii.  See Durette v. Aloha Plastic Recycling, Inc., 105 Haw. 490, 502 (2004).  "One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust."  Id. at 502 (citing Restatement (First) of Restitution § 1 comment a (1937)).  As Professor George E. Palmer stated, "[u]njust enrichment is an indefinable idea in the same way justice is indefinable.  But many of the meanings of justice are derived from a sense of injustice, and this is true of restitution since attention is centered on the prevention of injustice.  Not all injustice but rather one special variety: the unjust enrichment of one person at the expense of another."  Durette, 105 Haw. at 503 n. 9 (citing 1 G. Palmer, The Law of Restitution § 1.1 (1978)

12

(internal citation omitted)).  It follows that the person who is unjustly enriched is required to make restitution to the other. <u>Durette</u>, 105 Haw. at 502.  While unjust enrichment may be a "broad and imprecise term," the court emphasized that in deciding when to apply restitution, the prevention of injustice guides. <u>Id.</u> at 502-03 (<u>citing</u> A. Denning, The Changing Law 65 (1953)).

In summary, the court clarified that there are two required elements of an unjust enrichment claim.  To satisfy the elements of their unjust enrichment claim, Counter Claimants must prove (1) they conferred a benefit upon TEAM and that (2) the retention of the benefit was unjust.  <u>See</u> <u>Durette</u>, 105 Haw. at 504.  Counter Claimants plead that TEAM must make restitution to them in addition to compensating them for the value of Thornton's unjust retention of benefits.  Counterclaim ¶ 84.  Specifically, Counter Claimants seek reimbursement for all payments made to TEAM pursuant to the License Agreements, in addition to other monetary damages.  Counterclaim ¶ 85.

Counter Claimants assert that they have the right to rescission of the License Agreements, and that TEAM is unjustly enriched if it is allowed to keep the benefits it received pursuant to the agreements.  Counter Claimants' right to rescind the License Agreements is based on their allegation that TEAM, knowing that Counter Claimants had employed Thornton as an agent to conduct the negotiation, continued to employ him, without

13

disclosure, on their own account.  <u>See</u> Restatement (Second) of Agency § 313 (prohibiting one party to a transaction from covertly employing the agent of another party in such transaction).  Rescission is one of the available remedies for such a breach of agency law.  Restatement (Second) of Agency § 313, comment a; <u>see</u> <u>e.g.</u>, <u>Beasley v. Trontz</u>, 677 S.W. 2d 891, 894 (Ky. Ct. App. 1984) ("It is equally established that all transactions in which the agent has either acted for himself or for a party whose interest is adverse to his principal are voidable by the principal and may be repudiated by the principal without a showing that he was injured.")  "[T]he principal or employer ignorant of the double agency may at his election . . . rescind the contract . . . . [This] consequence[] follow[s] even though the principal ignorant of the duplicitous agency cannot prove actual injury to himself or that the agent committed an intentional fraud." <u>Anderson v. Anderson</u>, 293 Minn. 209, 216, 197 N.W.2d 720, 724 (Minn. 1972) (internal citations omitted).

Counter Claimants specifically allege that TEAM employed Thornton as their agent while being aware that Thornton was working in the same capacity for Counter Claimants. Moreover, TEAM's president, Tom Kiely, declared under oath that he personally negotiated the terms of the License Agreements with William Wright and Archie Thornton.  Counterclaim ¶ 57.

Counter Claimants' allegations are sufficient to

14

satisfy the elements required to establish an unjust enrichment
claim.  As to element 1, Counter Claimants clearly conferred a
benefit upon TEAM by performing, at least for a period of time,
their obligations under the License Agreements and making
payments.  These benefits were conferred pursuant to the terms of
the License Agreements, under which Counter Claimants received
the right to use the trademark.  However, because TEAM allegedly
employed Thornton as a double agent, Counter Claimants may have a
right to restitution for any unjust enrichment of TEAM that they
can quantify.  Recalling the Hawaii Supreme Court's
characterization of unjust enrichment as a principle designed to
prevent injustice, the Court concludes that in the event a
contract was negotiated by an agent working for both parties to
the transaction such a contract may possess inequitable terms
that unjustly enrich the party who was aware of the agent's dual
role.  See Durette, 105 Haw. at 502-03.

Counter Claimants also contend that TEAM's payment of a
$25,000 commission to Thornton is evidence of unjust enrichment
because Thornton submitted invoices to AMCON Beverage Company
totaling $20,000 for negotiating the License Agreements on behalf
of the Licensee at the same time.  Counterclaim ¶¶ 36, 52-54.
However, the Court fails to see how payment of a commission to
Thornton constitutes unjust enrichment to TEAM.  Any evidence
regarding Thornton's receipt of commissions from both parties may

support a claim of unjust enrichment against Thornton, but the Court does not address the claim as it applies to Thornton at this time.

The Court finds that TEAM may have been unjustly enriched by the benefits conferred upon it by Counter Claimants when they performed their obligations and made payments pursuant to the License Agreements that were negotiated by an alleged dual agent.  Counter Claimants may also have the right to restitution for additional monetary damages that resulted from Thornton's alleged undisclosed dual agency.  Accordingly, the Court GRANTS Counter Defendant TEAM's Motion to Dismiss Count 4 against TEAM.

## III. <u>Count 4: Duty of Good Faith and Fair Dealing</u>

"Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." <u>Simmons v. Puu</u>, 105 Haw. 112, 118 (2004); <u>Best Place, Inc. v. Penn America Insurance Co.</u>, 82 Haw. 120, 123-24 (1996). "Restatement (Second) Contracts § 205 (1979) provides that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" <u>Simmons</u>, 105 Haw. at 119 (2004).  This duty requires all parties to a contract to fulfill the obligations of that contract.  <u>Best Place</u>, 82 Haw. at 125; <u>Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.</u>, 107 Haw. 423, 436 (Haw. Ct. App. 2005).  The duty does not

extend to the formation of the contract.  Restatement (Second) of Contracts § 205 comment c.

In McElroy, the plaintiff alleged that the defendant was liable for breaching the duty of good faith and fair dealing when it made willful and negligent misrepresentations relating to their joint business aims.  Id.  The defendant argued that it could not be liable for breaching the duty because it had not breached any of its specific contractual obligations.  Id.  Despite there being no evidence that defendant actually breached a contractual obligation, the court held that there was a genuine issue of material fact as to whether the defendant had been "faithful to an agreed common purpose and acted consistently with the justified expectations of [the plaintiffs]."  Id. at 437.

Consistent with the holding in McElroy, TEAM's argument that it can not be liable for an independent breach of its duty of good faith and fair dealing if it did not violate an explicit term of the contract is unavailing.  Counter Claimants have a viable claim if they can show that Counter Defendant TEAM acted to deprive them of the benefits of the contract or failed to perform or enforce the contract in good faith.  See Simmons, 105 Haw. at 118.

To this end, Counter Claimants allege that TEAM breached this duty when it sued "affiliates and promoters" of TBG, Inc. for amounts that only TBG, Inc. could be liable.

Counterclaim ¶ 89.  It is their contention that TEAM knew TBG, Inc. was the actual licensee to the License Agreements based on TEAM's relationship with Thornton.  Counter Claimants state that they have incurred legal fees and expenses as a result of TEAM's litigation pursuits.  Counterclaim ¶ 90.  In essence, Counter Claimants are alleging TEAM breached the duty of good faith and fair dealing in its attempt to enforce the contract when it filed suit against defendants other than TBG, Inc..

As counsel for Counter Claimants conceded at the September 5, 2006 hearing, the scope of this claim must be limited only to excessive attorney's fees and litigation costs that TBG, Inc. incurred as a result of TEAM's decision to sue any additional defendants other than TBG, Inc..  If, as Counter Claimants allege, TEAM knew TBG, Inc. was the sole licensee under the License Agreements, then TEAM owed no duty of good faith and fair dealing to Distributing; and consequently Distributing would have no cause of action for this contract claim.  On the other hand, TEAM has the right to sue TBG, Inc. itself, for the alleged breaches of the License Agreements.  Accordingly, this claim for breach of duty of good faith and fair dealing is limited to fees and costs incurred by TBG, Inc. that it would not have otherwise incurred had TEAM only sued TBG, Inc. in the original claim.

The Court GRANTS Counter Defendant TEAM's Motion to Dismiss Distributing's Count 4.  However, the Court DENIES TEAM's

18

Motion to Dismiss TBG, Inc.'s Count 4 with the limitations iterated above.

## IV.  Count 5: Fraud/Misrepresentation

Federal Rule of Civil Procedure 9(b) requires particularity in the pleading in all averments of fraud.  Fed. R. Civ. P. 9(b); see Nakamoto v. Hartley, 758 F. Supp. 1357, 1365 (D. Haw. 1991) (citing Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973)).  In Hawaii, to establish an action for fraud, a plaintiff must prove that "(1) false representations were made by defendant[ ], (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." Matsuura v. E.I. du Pont de Nemours and Co., 102 Haw. 149, 176 (2003) (quoting Shoppe v. Gucci Am., Inc., 94 Haw. 368, 386 (2000)). However, in the case of alleged fraud by omission, Hawaii courts have adopted Section 551 of the Restatement (Second) of Torts, which states in pertinent part:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) Torts § 551(1) (1976); see Molokoa Village Development Co., Ltd. v. Kauai Elec. Co., Ltd., 60 Haw. 582, 590

(Haw. 1979); <u>Pancakes of Hawaii, Inc. v. Pomare Properties Corp.</u>, 85 Haw. 300, 318 (Haw. Ct. App. 1997).  Thus, TEAM may be liable for the tort of fraudulent omission if it (1) failed to disclose a fact that it knew may have caused Counter Claimants to act, and (2) TEAM had a duty to Counter Claimants to exercise reasonable care to disclose that fact.

Counter Claimants have pled with adequate particularity that TEAM failed to disclose a fact that may have caused them to agree to the License Agreements, in satisfaction of the first element of their fraud claim.  Counter Claimants allege that Thornton was simultaneously operating as an agent for both TEAM and Counter Claimants.  Counterclaim ¶¶ 49, 63, 79.  As such, Thornton negotiated the License Agreements with TEAM on behalf of Counter Claimants, while earning a commission of $25,000 from TEAM.  Counterclaim ¶¶ 36, 48.  At no time during the negotiation or execution of the License Agreements did TEAM inform Counter Claimants that Thornton was employed as a dual agent.  Counterclaim ¶¶ 41, 42.  Counter Claimants assert that they believed as a material fact that Thornton was operating as their consultant/agent when forming the contract, and TEAM's failure to correct that assumption amounts to a fraudulent omission.  Counterclaim ¶ 94.

In order to satisfy the second element of a claim for fraud based on an omission, Counter Claimants must offer evidence

that TEAM had a duty to disclose that fact.  Restatement (Second) of Torts (Second) Torts § 551(1).  The comment to the Restatement cautions:

> Unless he is under some one of the duties of disclosure stated in Subsection (2), one party to a business transaction is not liable to the other for harm caused by his failure to disclose to the other facts of which he knows the other is ignorant and which he further knows the other, if he knew of them, would regard as material in determining his course of action in the transaction in question.

Restatement (Second) of Torts § 551 comment a.  Pertinent to this case, Subsection (2) explains that a party has a duty of reasonable care to disclose:

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2)(e); Molokoa, 60 Haw. at 590;[7] see also Pancakes of Hawaii, 85 Haw. at 318

---

[7]  The Molokoa court cited comment l as illuminating:

> The continuing development of modern business ethics has, however, limited to some extent this privilege to take advantage of ignorance. There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that the adversary, by reason of the relation between them, the customs of the trade or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it exists. In this type of case good faith and fair dealing may require a disclosure.

**(Cont.)**

(assessing the applicability of elements (b) and (c) of Subsection (2)).

Subsection (2)(e) provides adequate grounds for Counter Claimants to assert that TEAM had a duty to exercise reasonable care in disclosing the role of Thornton, an active negotiator in the License Agreements.  In formulating a contract, the fact that one party's representative or negotiator is actually an agent of the other party rises to the level of a "basic fact to the transaction."  Furthermore, under any objective circumstances, the party who is not aware of the person's dual role would reasonably expect the other party to inform it of the person's status.  Superior knowledge or advanced business acumen do not lead to liability, but when one party controls information, which the other cannot gain through its own diligence, then liability

_____

It is extremely difficult to be specific as to the factors that give rise to this known, and reasonable, expectation of disclosure. In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware. . . .
There are indications, also, that with changing ethical attitudes in many fields of modern business, the concept of facts basic to the transaction may be expanding and the duty to use reasonable care to disclose the facts may be increasing somewhat. This Subsection is not intended to impede that development.

Restatement (Second) of Torts § 551 comment *l*.

22

may arise.  See Restatement (Second) of Torts § 551 comment k.  A
fraud claim is particularly applicable where the basic
undisclosed fact refers to the concealed role of a person
instrumental to the negotiation, as access to the truth is so
limited.

The Court concludes that Counter Claimants have pled
sufficient facts with particularity to state a claim of fraud by
omission.  They have pled that TEAM failed to disclose a fact
that it knew caused Counter Claimants to refrain from acting
while having a duty to exercise reasonable care in disclosing the
fact.  The Court DENIES Counter Defendant TEAM's Motion to
Dismiss Count 5.

## V.   Count 6: Punitive Damages

Counter Claimants assert that TEAM's conduct was
"willful, malicious, reckless, and wanton," entitling Counter
Claimants to punitive damages.  Counterclaim ¶ 98.  "[A] claim
for punitive damages is not an independent tort, but is purely
incidental to a separate cause of action."  Ross v. Stouffer
Hotel Co. (Hawai'i) Ltd., Inc., 76 Haw. 454, 466 (1994) (citing
Kang v. Harrington, 59 Haw. 652, 660 (1978)).  Counter Claimants
appear to acknowledge that a request for punitive damages does
not amount to an independent claim.  Opposition at 19-20.  They
state that Count 6 results from TEAM's fraudulent conduct (Count
5) and inducement or participation in Thornton's breach of

fiduciary duties (Count 2) and "may be treated as an expansion of the prayer for relief." Id. Counter Claimants also listed punitive damages as part of the relief sought in section (c) of the final paragraph of the Counterclaim. Counterclaim at 22. The Court construes Count 6 to be an extension of Counter Claimants' prayer for relief. Accordingly, the Court GRANTS Counter Defendant TEAM's Motion to Dismiss Count 6 as an independent claim and dismisses Count 6.

At the same time, the Court notes that Counter Claimants may still seek punitive damages as part of their requested relief. Punitive damages are typically appropriate when allegations of malicious conduct or "willful and wanton conduct in reckless disregard of rights or interests" can be proven. Masaki v. General Motors Corporation, 71 Haw. 1, 10 (1989). "[T]he proper measurement of the amount of punitive damages is the degree of the defendant's malice, oppression, or gross negligence that forms the basis for liability for punitive damages and the amount of money required to punish the defendant. Ditto v. McCurdy, 98 Haw. 123, 131 (2002) (citing Kang v. Harrington, 59 Haw. 652, 663 (1978)).

Punitive damages may be awarded in negligence and strict liability claims when the conduct is outrageous. Id.; see also Kaopuiki v. Kealoha, 104 Haw. 241, 257 (Haw. Ct. App. 2003). Punitive damages may be assessed in cases involving fraud where

the wrongdoer acts wantonly, oppressively, or with the spirit of malice.  See Kang, 59 Haw. at 662.  Here, the allegations describe conduct that includes willful fraud in the form of a failure to disclose significant facts prior to the consummation of a business deal.  The Court concludes that Counter Claimants have pled sufficient facts of outrageous conduct to sustain their request for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Counter Defendant Television Events & Marketing, Inc.'s Motion to Dismiss the Counterclaim of Counter Claimants AMCON Distributing Co. and The Beverage Group, Incorporated. This Order only addresses the claims as they apply to TEAM, and not Counter Defendants Archie Thornton or The Thornton Works, Inc..

The Court denies TEAM's motion to dismiss Count 2 - Breach of Fiduciary Duty (TEAM).  The Court finds that a third party's interference with one's breach of a fiduciary duty to another is actionable under Hawaii law, and Counter Claimants offer sufficient facts that TEAM may have "substantially" or "intentionally" assisted or "colluded" with Thornton to breach his duty to Counter Claimants.

The Court denies TEAM's motion to dismiss Count 3 - Unjust Enrichment/ Restitution.  The Court finds that Counter

Claimants assert sufficient allegations that TEAM may have been unjustly enriched by benefits conferred upon it by Counter Claimants pursuant to the License Agreements that were negotiated by Thornton.

The Court denies TEAM's motion to dismiss TBG, Inc.'s Count 4 - Duty of Good Faith and Fair Dealing, but limits the claim to excessive attorney's fees and costs incurred by TBG, Inc. as a result of TEAM suing the other defendants.  The Court grants TEAM's motion to dismiss Distributing's Count 4.

The Court denies TEAM's motion to dismiss Count 5 - Fraud/Misrepresentation.  The Court concludes that Counter Claimants have pled sufficient facts with particularity to state a claim of fraud by omission.

Finally, the Court construes Count 6 - Punitive Damages to be an extension of Counter Claimants' prayer for relief and finds that a reasonable jury could conclude the facts as alleged constitute outrageous conduct.  The Court dismisses the claim as an independent cause of action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 12, 2006.

Alan C. Kay
Sr. United States District Judge

26